UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICHARD THOMAS,

           Plaintiff,

    v.

AMAZON.COM SERVICES LLC,
AMAZON.COM INC, and ANDREW R.
JASSY,

           Defendants.

**MEMORANDUM & ORDER**
23-CV-01271 (HG) (JAM)

**HECTOR GONZALEZ**, United States District Judge:

    *Pro se* plaintiff Richard Thomas brings this action against Defendants Amazon.com Services LLC, Amazon.com, Inc. (collectively, "Amazon"), and Andrew R. Jassy, President and CEO of Amazon.com.  ECF No. 24 (Amended Complaint).  Plaintiff raises a myriad of claims arising from Plaintiff's employment at Amazon, including claims of race discrimination, retaliation, sexual harassment, gender discrimination, disability discrimination, religious discrimination, as well as violations of the New York Labor Law ("NYLL") for the purported failure to provide Plaintiff with sick pay, wage notices, and wage statements.  *See* ECF No. 24 ¶¶ 11, 16, 20.  Plaintiff also alleges violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  He also asserts a wrongful death claim related to the death of his mother.  *Id.* ¶¶ 5, 21.  Finally, Plaintiff alleges that Amazon knowingly and intentionally infected him with COVID-19.  *Id.* ¶ 10.

    Pending before this Court are Amazon's and Mr. Jassy's motions to dismiss the Amended Complaint.  *See* ECF No. 29 (Amazon Motion to Dismiss); ECF No. 45 (Jassy Motion to Dismiss).  Also pending is the parties' supplemental briefing on the issue of retaliation.  *See* ECF No. 60 (Defendants' Supplemental Briefing); ECF No. 64 (Plaintiff's Supplemental Briefing).

For the reasons set forth below, the motions are granted and the Amended Complaint is dismissed.[1]

## PROCEDURAL HISTORY

Plaintiff filed this case in Kings County Supreme Court on January 3, 2023.  ECF No. 1-1 (Complaint).  Amazon removed the case to this Court on February 16, 2023, based on both diversity and federal question jurisdiction.  ECF No. 1 at 1 (Notice of Removal).  On November 1, 2023, the Court denied Plaintiff's motion to remand the case to state court.  ECF No. 19 (Order Denying Remand).  The Court found that Amazon properly followed the substantive and procedural requirements of the removal statutes and that the case was properly before this Court pursuant to its diversity jurisdiction.  *Id.*

On March 7, 2023, Amazon filed a premotion conference letter in anticipation of its motion to dismiss.  ECF No. 7.  The Court subsequently ordered Plaintiff to respond to the letter and indicate whether Plaintiff believed the complaint could be amended to address the issues raised in Amazon's letter.  *See* November 8, 2023, Text Order.  When Plaintiff indicated that he believed his complaint could be amended, *see* ECF No. 22 (Plaintiff's Letter), the Court granted Plaintiff leave to amend and set a schedule for Amazon's motion to dismiss.  *See* November 28, 2023, Text Order.  Plaintiff filed the Amended Complaint on December 20, 2023.  ECF No. 24.

---

[1]     Although Plaintiff has not specifically alleged violations under Title VII of the Civil Rights Act, because Plaintiff is proceeding *pro se*, the Court would typically construe the overlapping NYSHRL and NYCHRL allegations to also allege violations under Title VII. *Ninying v. Fire Dep't*, No. 17-cv-688, 2019 WL 7556261, at *1 n.1 (E.D.N.Y. Mar. 28, 2019) (liberally construing allegations of discrimination under Title VII for a *pro se* litigant), *aff'd sub nom. Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112 (2d Cir. 2020).  However, because the Court finds dismissal warranted under the more permissive standards of the NYSHRL and the NYCHRL, the Court will not separately analyze the claims under Title VII, as they would also necessarily fail.  *Lettieri v. Anti-Defamation League Found.*, No. 22-cv-9889, 2023 WL 5152447, at *4 (S.D.N.Y. Aug. 10, 2023) (on a motion to dismiss, if the NYCHRL claims fail, "parallel claims under Title VII and the NYSHRL fail, as well").

While the parties were briefing Amazon's motion to dismiss, Plaintiff voluntarily dismissed three individual defendants, *see* ECF No. 31 (Notice of Voluntary Dismissal), and served one individual defendant, Defendant Andrew R. Jassy, *see* ECF No. 40 (Summons Returned Executed). After Mr. Jassy appeared, he also indicated an intent to move to dismiss the Amended Complaint. ECF No. 41 (Jassy's Letter). After Plaintiff responded, the Court set a schedule for Mr. Jassy's motion. *See* April 8, 2024, Text Order.

On April 15, 2024, Magistrate Judge Marutollo stayed discovery pending the Court's decision on Defendants' motions to dismiss. ECF No. 48 (Order Granting Motion to Stay). On July 15, 2024, the Court found Plaintiff had not established the requisite elements for a preliminary injunction, and therefore denied Plaintiff's motion for a preliminary injunction. ECF No. 58 (Order Denying Preliminary Injunction).

On November 12, 2024, in response to the Court's Order to Show Cause, *see* October 21, 2024, Order to Show Cause, Plaintiff voluntarily dismissed Defendant Jeffrey P. Bezos. ECF No. 59 (Notice of Voluntary Dismissal).

## **BACKGROUND**

The Court draws the following facts from the Amended Complaint as well as other documents of which the Court may take judicial notice.[2]

---

[2]      The Court is "required to treat [Plaintiff's] factual allegations as true, drawing all reasonable inferences in favor of Plaintiff[] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court therefore "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *Id.* Although the general rule is that a plaintiff may not raise new allegations in his opposition to a motion to dismiss, because Plaintiff is representing himself, the Court will consider the allegations in the Amended Complaint, *see* ECF No. 24, in Plaintiff's Opposition, *see* ECF No. 34 (Opposition to Amazon's Motion), and Plaintiff's Supplemental Briefing, *see* ECF No. 64, in deciding the motions. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the

A.    *Abandoned Claims:  Wrongful Death and Sick Pay Claims*

Plaintiff has affirmatively withdrawn his wrongful death claim, *see* ECF No. 34 ¶ 4, and the Court will therefore not analyze this claim.  Plaintiff has also affirmatively withdrawn his sick pay claim.  *See* ECF No. 55 at 4 (Opposition to Jassy's Motion).  Although Plaintiff, in his Opposition to Mr. Jassy's Motion, *see id.*, indicates that he wishes to amend the sick pay claim to bring it now under the New York City Earned Safe and Sick Time Act, *see* N.Y.C. Admin. Code §§ 20-911 *et seq.*, as discussed below, because the Court finds that Plaintiff had more than an ample opportunity to plead his case extensively, *see infra* Section VIII, the Court declines him leave to further amend the Amended Complaint.

B.    *Allegations Against Defendant Jassy:  Wage and Notice Claims, and Aiding and Abetting Discrimination and Retaliation*

Plaintiff alleges two claims against Mr. Jassy.  First, Plaintiff alleges that Mr. Jassy failed to comply with the wage statement and notice provisions of the NYLL.  *Id.*  Second, Plaintiff alleges that Mr. Jassy aided and abetted in the discrimination, retaliation, and sexual harassment—as explained in more detail below—that Plaintiff allegedly experienced at Amazon. *Id.* ¶ 20.  Mr. Jassy is not mentioned elsewhere in the Amended Complaint.

C.    *Discrimination Based on Race and Skin Color*

Plaintiff alleges he was discriminated against based on his race and skin color while he was employed at Amazon.  This allegation is derived from interactions Plaintiff had with several co-workers, including Arthur Turner, Edward Andron, Fredrick, and Isabel Sutnick, and supervisors Paola and Justin Picciano.[3]  Plaintiff alleges Mr. Turner frightened Plaintiff in

---

motion."); *Guzman v. Barr*, No. 19-cv-7163, 2021 WL 135909, at *2 (S.D.N.Y. Jan. 14, 2021) ("In addition to what is contained in the complaint, the Court may consider factual statements made in a *pro se* plaintiff's opposition to a motion to dismiss.").

[3]    Plaintiff does not provide a last name for Fredrick or Paola.

October 2022 by approaching Plaintiff from behind and squeezing Plaintiff's waist.  ECF No. 24 ¶ 6(A).  When Plaintiff jumped in response, Mr. Turner allegedly referred to Plaintiff using a racial epithet and said:  "Did you see the n****r jump."  *Id.* ¶ 6(B).[4]  Plaintiff "speculates" that Amazon ordered Mr. Turner to "watch and spy, contain and control and claim the black employees."  *Id.* ¶ 6(G).  Plaintiff asserts Mr. Turner also told Plaintiff that he must wear safety shoes even though the "white managers" wore sneakers, *id.* ¶¶ 6(K)–(L), and, in relation to COVID-19, Mr. Turner told Plaintiff that all "these diseases came where [Plaintiff was] from," which Mr. Turner believed was Africa.  *Id.* ¶ 6(M).

Plaintiff claims Edward Andron committed discriminatory acts against him in 2022 because Plaintiff "is a man, or specifically a black man."  *Id.* ¶ 7(A).  Mr. Andron made "multiple racist statements" toward Plaintiff and other workers, *id.* ¶ 7(G), including questioning why Amazon did not have a "White Employee Network," *id.* ¶ 7(E), making statements about individuals who wore shirts with "pictures of black people or black culture," *id.* ¶ 7(G), and commenting on a Black female employee's hair, *id.*

Plaintiff asserts that Fredrick told Plaintiff in 2021 that he would be working with another Black male employee, whom he referred to as "another n****r."  *Id*. ¶ 8(A).  Fredrick did not refer to other employees of different races with derogatory terms.  *Id*. ¶ 8(B).

Plaintiff believes Supervisor Paola discriminated against Plaintiff in December 2020 and January 2021, by directing him to work in the "ship dock" area instead of the "trans-ship department" where he observed white employees worked.  *Id.* ¶ 9(B).  When Plaintiff was given the opportunity to work in the "trans-ship department," Plaintiff alleges Paola diverted the work away from Plaintiff's lane and toward the white employees' lanes.  *Id.* ¶ 9(E).  When Plaintiff's

---

[4]    Throughout this Order, the Court has modified the expletives that Plaintiff details in the Amended Complaint.

productivity went down, Paola told Lin (another supervisor) to direct Plaintiff to the "ship dock." *Id.* Plaintiff alleges Paola used Amazon's "software or technology" to discriminate against him. *Id.* ¶ 9(I).

On December 22, 2022, Supervisor Justin Picciano issued a write-up for Plaintiff because "his rate was too low." *Id.* ¶ 12(A). Mr. Picciano said that Plaintiff's rate "was the worst in all of the three buildings of Amazon." *Id.* ¶ 12(E). Mr. Picciano also told Plaintiff that his bathroom break times were excessive. *Id.* ¶ 12(C). Mr. Picciano warned Plaintiff that if he was written up again, it would be his final write-up. *Id.* ¶ 12(F). Plaintiff alleges that he did not "have the worst rate in Amazon. [He] has the worst skin color in Amazon." *Id.* ¶ 12(G). He "speculates" that there are other employees at Amazon who are Mr. Picciano's friends and who "do not have to have a work rate inside of Amazon." *Id.* ¶ 12(H).

On December 25, 2022, Plaintiff filed an internal complaint at Amazon against Mr. Picciano. *Id.* ¶ 13(A). Isabel Sutnick reviewed the complaint and told Plaintiff that he did, in fact, have a low rate on December 22, 2022. *Id.* Plaintiff and Ms. Sutnick thereafter "had an argument" for about an hour. *Id.*

Plaintiff alleges that Amazon fired Plaintiff on April 9, 2023, because of his race or skin color. *Id.* ¶ 16.[5]

---

[5] Plaintiff alleges in the Amended Complaint that he was terminated on April 8, 2023, *id.* ¶ 16, but he has filed with his Opposition a letter from Amazon which indicates that he was terminated on April 9, 2023, *see* ECF No. 34 at 24. The Court takes judicial notice of the documents attached to the Amended Complaint, Opposition, and Supplemental Briefing. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Sommersett v. City of New York*, No. 09-cv-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations."). Accordingly, the Court uses the April 9th date as his termination date, although it is ultimately immaterial to the Court's legal conclusions.

### D.    Sexual Harassment and Discrimination Based on Gender and Sexual Orientation

Plaintiff also claims that he was discriminated against based on his gender and sexual orientation and that he endured sexual harassment.  Plaintiff alleges that Mr. Turner discriminated against Plaintiff after he squeezed Plaintiff's waist in October 2022 because Mr. Turner said Plaintiff "was screaming like a girl" and that he was sure he was "feeling like a girl at that time." *Id.* ¶ 6(B).  Plaintiff alleges that Mr. Turner "would have never grabbed and squeezed a female employee by her waist," *id.* ¶ 6(D), and would have "never told anyone in the LGBTQ community that they were feeling like a girl," *id.* ¶ 6(E).

In August 2022, Mr. Andron purportedly told Plaintiff that a purple vibrator he was handling in the recycling items was for Plaintiff.  *Id.* ¶ 7(A).  Plaintiff claims this is "sexual harassment, and shows that [Mr. Andron] can commit these discriminatory acts against [Plaintiff] because [Plaintiff] is a man, or specifically a black man, and [Mr. Andron] believes nothing will happen to him." *Id.*  In October 2022, Mr. Andron told Plaintiff to "[s]top looking at porn sites." *Id.* ¶ 7(B).  Also in the fall of 2022, Mr. Andron commented that "Amazon isn't a place for white straight men," and used a derogatory expletive to describe women at Amazon. *Id.* ¶¶ 7(C), (E).  Mr. Andron and Plaintiff argued about whether men were permitted to use women's bathrooms at Amazon.  *Id.* ¶¶ 7(E)–(F).  Mr. Andron later took Plaintiff to Human Resources Manager Tiffany Ocampo and asked whether men could use the women's restrooms. *Id.* ¶ 7(F).  Ms. Ocampo said "[i]f an employee feels like a woman, then it's perfectly fine for them to use the women's bathroom." *Id.*  Mr. Andron then asked Plaintiff if he felt like a woman.  *Id.*  Plaintiff alleges that Ms. Ocampo made no effort to "correct" Mr. Andron.  *Id.*  In November 2022, Mr. Andron told Plaintiff that "[e]verybody knows that [he is] out . . . .  There's nothing wrong with those people, who are on the other side of the spectrum." *Id.* ¶ 7(H).

Plaintiff further alleges that Mr. Picciano discriminated against him based on his gender when he told Plaintiff that his bathroom breaks were excessively long because he would never tell a woman how long to use the bathroom. *Id.* ¶¶ 12(C), (D).

### E.    *Discrimination Based on Religion & Intentional COVID-19 Infection*

Plaintiff states that Amazon did not follow city, state, federal, and CDC protocols during the COVID-19 pandemic. *Id.* ¶ 10(A). Specifically, Plaintiff alleges that employees were "unmasked," "packed on lanes," and did not maintain spacing of six feet. *Id.* ¶ 10(C). Plaintiff alleges Black and Hispanic employees were disproportionately affected by these practices as "white workers could avoid ship dock because they had COVID concerns," but Black employees could not. *Id.* ¶ 10(B). As a result, Plaintiff alleges he "attained COVID-19 in January of 2021, along with the majority of black and Hispanic employees." *Id.* ¶ 10(B).

Plaintiff also asserts that he was discriminated against based on his religion when he was denied an accommodation for an exemption from the COVID-19 vaccine for about a month, from December 2021 to January 2022. *Id.* ¶ 11. Plaintiff alleges that Amazon, through employee Joshua Jones, denied Plaintiff's religious accommodation because Plaintiff's religion is "America." *Id.* ¶ 11(B). Plaintiff states that Amazon easily approved other employees' religious accommodations when they listed a different religion, like Christianity. *Id.* ¶ 11(C). Plaintiff concedes that Amazon eventually approved his request for an accommodation. *Id.* ¶ 11(D).

### F.    *Discrimination Based on Disability*

Plaintiff alleges he is "blind in one eye," and "was harassed to do more work than other workers, and was forced to have a higher rate of worker than other workers." *Id.* ¶ 19(A). Plaintiff claims he was "forced to load numerous pallets for around two hours, when [he] is not even supposed to move and load pallets, when he's blind in right eye, and has no vision on his

right side." *Id.* ¶ 19(D).  When Plaintiff told Mr. Picciano and other managers that he could not

see the small print on the labels of the packages, Mr. Picciano asked Plaintiff if he had problems

with his vision.  *Id.* ¶ 19(G).  Plaintiff responded "I don't have to tell you if I have problems with

my vision.  I can't hardly see this print, it's too small, and I'm straining my eyes to see the

label." *Id.*

       G.    *Retaliation*

      Plaintiff alleges Amazon retaliated against him in multiple ways.  First, he claims that

Paola and an individual named Santiago tried to transfer him out of the "trans-ship department"

because of his race.  *Id.* ¶¶ 9(F), (G).  Second, Ms. Sutnick retaliated against him after he filed a

complaint against Mr. Picciano by assigning him "laborious work" for two hours.  *Id.* ¶ 14(A);

*see also id.*¶ 19(D).  Third, Plaintiff alleges Mr. Picciano retaliated against him after Plaintiff's

internal Amazon complaint was filed by:  (i) ensuring he was assigned to places that had little

work so that Plaintiff could be written up again; (ii) directing others to assign Plaintiff to work at

the "ship dock"; and (iii) directing others to assign Plaintiff away from his workspace.[6]  *Id.*

¶¶ 14(C), (E), (H).  Finally, Plaintiff alleges that Amazon retaliated against him by suspending

and eventually terminating his employment after he:  (i) filed a complaint with the New York

City Department of Consumer and Worker Protection ("DCWP"); (ii) filed the Complaint in the

instant action; and (iii) filed various internal complaints at Amazon, including a complaint in

February 2023.  *Id.* ¶¶ 14(L)–(O), 18(A), (B); *see also* ECF No. 34 at 2–7.[7]

---

[6]     Plaintiff alleges this occurred during a conversation in which Plaintiff confronted
Mr. Picciano about discriminating against him because of his race.  *Id.* ¶ 14(H).

[7]     The Court cites to pages assigned by the Electronic Case Files System ("ECF").

## **LEGAL STANDARD**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson v. Mount Sinai Hosp. Grp.*, No. 23-466-cv, 2024 WL 3289475, at *1 (2d Cir. July 3, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[8]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In addition to requiring sufficient factual matter to state a plausible claim for relief, pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain statement of claim against the defendant so that it has adequate notice of the claims against it. *Id.* at 677–78 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.*  To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that, even after *Twombly*, courts "remain obligated to construe a *pro se* complaint

---

[8]     Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

liberally").  The Court must construe *pro se* Plaintiff's pleadings "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

## DISCUSSION

### I.    Wage and Notice Claims

Plaintiff alleges that Defendants Amazon and Jassy failed to provide him with the relevant wage notice and wage statements required under Section 195 of the NYLL.  *See* ECF No. 24 ¶¶ 3(B), (C).  Section 195 requires an employer to provide an employee at the time of hiring with a notice:

> (1) describing the employee's rate of pay for regular and for overtime hours;
> (2) stating whether the employer intends to credit allowances for items such as tips, meals, and lodging toward the employee's minimum wage; (3) describing certain health care benefits; and (4) providing other basic information.

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024).  It also requires, each time wages are paid, for an employer to "furnish a statement detailing the calculation of regular and overtime pay for that pay period, along with information on deductions and minimum wage allowances."  *Id.*

Defendants argue that Plaintiff does not have Article III standing to assert these claims.  *See* ECF No. 29-1 at 15; ECF No. 45 at 12–13.  The Second Circuit recently addressed this issue in *Guthrie*.  113 F.4th at 303.  In that decision, the Second Circuit found, consistent with the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021), that a plaintiff "cannot rely on technical violations of the Labor Law but must allege actual injuries suffered as a result of the alleged wage notice and wage statement violations."  *Id.* at 305.  In other words, a plaintiff must allege a concrete injury to establish that he has Article III standing to pursue a claim for damages based on the alleged violations.  *Id.* at 306.  To do so, Plaintiff

must show "some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308.

Plaintiff has only alleged technical violations of NYLL § 195. *See* ECF No. 24 ¶¶ 3(B), (C). He has provided no theory "as to *how* he was injured by the [D]efendants' failure to provide the required documents." *Guthrie*, 113 F.4th at 309 (emphasis in original). Because Plaintiff has not addressed *how* he was injured—even after Defendants raised the issue in their opening papers, *see* ECF Nos. 34, 55—the Court finds the allegations to be deficient under the standard set forth in *TransUnion*. Accordingly, the Court finds, in light of the Second Circuit's ruling in *Guthrie*, that Plaintiff has not established that he has Article III standing to bring these claims. Defendants' motions are therefore granted as to these claims, and these claims are dismissed without prejudice for lack of subject-matter jurisdiction.

## II.    Claims that Amazon Intentionally Infected Plaintiff with COVID-19

Plaintiff alleges that Amazon intentionally infected him "along with the majority of black and Hispanic employees" with COVID-19 by virtue of how Amazon unequally implemented COVID-19 protocols at its worksite. ECF No. 24 ¶¶ 10(A), (B). In construing Plaintiff's claim liberally, the Court reviews this claim as an intentional discrimination claim under Section 1981. *See Smalls v. Amazon.com Servs. LLC*, No. 20-cv-5492, 2022 WL 356432, at *6 (E.D.N.Y. Feb. 7, 2022) (construing plaintiff's challenge to Amazon's COVID-19 protocols as a Section 1981 claim), *aff'd,* No. 22-615, 2022 WL 17491259 (2d Cir. Dec. 8, 2022). "To establish a claim under 42 U.S.C. § 1981, a plaintiff must allege facts supporting that "(1) the plaintiff is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022). To adequately plead the discriminatory-intent element, Plaintiff must plausibly allege that Amazon treated him "less favorably than a similarly situated

12

employee outside his protected group[.]"  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir.

2003).  The similarly situated employee "must be similarly situated in all material respects."

*Myers v. Doherty*, No. 21-3012-cv, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022).

    As in *Smalls*, Plaintiff's allegations fail to raise an inference of discriminatory intent.

*Smalls*, 2022 WL 356432, at *6.  His claims that white workers were subject to different

COVID-19 protocols than Black and Hispanic workers are conclusory at best.  *See Fouche v.

St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014) ("Plaintiff's bald assertions of

discrimination—unsupported by any meaningful comments, actions, or examples of similarly[-

]situated persons outside of the Plaintiff's protected class being treated differently—are

insufficient to survive a motion to dismiss.").  They also do not suggest that these employees

were "similarly situated in all material respects."  *Smalls*, 2022 WL 356432, at *6.  Accordingly,

Plaintiff's assertion that white workers and Black and Hispanic workers were subject to different

COVID-19 protocols does not raise an inference that Amazon treated similarly situated groups

differently.  Defendants' motion to dismiss is granted on this claim.

## III.    Employment Discrimination Claims

    Employment discrimination claims are analyzed under the burden-shifting framework

articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Robinson v. MSG

Ent. Grp., LLC*, No. 23-cv-9366, 2024 WL 3938361, at *4 (S.D.N.Y. Aug. 26, 2024).  The test

requires Plaintiff to first establish a *prima facie* case of discrimination.  *Id.*  "After a plaintiff

makes this prima facie showing, it is then the defendant's burden to proffer a legitimate non-

discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish

that the defendant's reason is in fact pretext for unlawful discrimination."  *Id.*  On a motion to

dismiss, plaintiff need only plead sufficient facts to establish a *prima facie* case, and the second

and third steps of the *McDonnell-Douglas* framework are not considered.  *Id*. at *5.

13

The NYSHRL prohibits an employer from, *inter alia*, "discharg[ing] from employment" or "discriminat[ing] against [an] individual in compensation or in terms, conditions or privileges of employment" "because of," *inter alia*, an individual's race, creed, color, sexual orientation, gender identity, sex, or disability.  N.Y. Exec. Law § 296(1)(a).  The NYCHRL contains similar prohibitions against discrimination "because of the actual or perceived" race, creed, color, gender, sexual orientation, or disability of a person.  N.Y.C. Admin. Code § 8-107(1)(a). Historically, the NYSHRL's liability standard was coextensive with Title VII's, but recent amendments to the statute[9] set it at a level either "identical" to or at least "closer" to the NYCHRL.  *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023).  "Courts must construe the NYCHRL liberally for the accomplishment of the uniquely broad and remedial purposes thereof."  *Passante*, 2024 WL 4171026, at *5.

Under the more relaxed standard of the NYCHRL, "a plaintiff need only show differential treatment of any degree based on a discriminatory motive."  *See Keles v. Davalos*, 642 F. Supp. 3d 339, 376 (E.D.N.Y. 2022).  Still, the NYCHRL is "not a general civility code," and a plaintiff must still sufficiently allege that a defendant had a discriminatory motive, or, in other words, "treated [him] less well at least in part *because of*" his protected characteristics.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (emphasis in original); *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 245 (S.D.N.Y. Mar. 7, 2024) (applying the NYCHRL's "lenient pleading standard" to NYSHRL claims).  For the

---

[9]    In June of 2019, New York State amended the NYSHRL, "the effect of which is to render the standard for claims brought under the NYSHRL closer to the standard under the [NYCHRL]."  *Passante v. Cambium Learning Grp.*, No. 23-cv-4060, 2024 WL 4171026, at *5 (E.D.N.Y. Sept. 12, 2024).

reasons stated herein, all of Plaintiff's allegations fall below even this more lenient pleading standard.

### A.    Religion

"To make out a prima facie case under NYCHRL and NYSHRL, Plaintiff must demonstrate that (1) he has a bona fide religious belief conflicting with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement." *Chinchilla v. NYPD*, No. 23-cv-8986, 2024 WL 3400526, at *7 (S.D.N.Y. July 12, 2024).  Plaintiff alleges that he informed Amazon that he would not be able to comply with Amazon's COVID-19 vaccine requirement because it was against his religion, which he alleges is "America."  ECF No. 24 ¶ 11.  The Court has concerns as to whether Plaintiff has adequately pled a "bona fide religious belief" that would conflict with the vaccination requirement.[10]  But, even accepting that to be true, Plaintiff's *prima facie* case fails because Plaintiff has not adequately alleged that he was disciplined or "treated less well" for failure to comply with the requirement.  *See Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 453 (S.D.N.Y. 2012) ("The third prong requires some adverse employment action— typically, discipline, demotion, transfer or termination—for refusing to comply with the conflicting employment requirement.").  To the contrary, Plaintiff admits that he was granted an exemption from the vaccine requirement, albeit a month after requesting the exemption.  ECF No. 24 ¶ 11.  Accordingly, "his claim that Defendant failed to accommodate his religious

---

[10]    Nevertheless, "both the Supreme Court and the Second Circuit have cautioned courts regarding their limited function when determining whether religious beliefs are protected because defining what is a religious belief or practice is more often than not a difficult and delicate task." *Beickert v. N.Y.C. Dep't of Educ.*, No. 22-cv-5265, 2023 WL 6214236, at *3 (E.D.N.Y. Sept. 25, 2023) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981) and citing *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 818 (2d Cir. 2003)).

observance is implausible and fails.  Put simply, Defendant did accommodate him."  *Chukwueze*, 891 F. Supp. 2d at 454 (finding no religious discrimination claim where plaintiff was initially denied an accommodation but was ultimately provided one).

      *B.*    *Race, Skin Color, Gender, Sexual Orientation, and Disability*

For Plaintiff's other employment discrimination claims, he must allege facts showing: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Mitchell v. N.Y.C. Dep't of Educ.*, No 20-cv-1555, 2022 WL 621956, at *5 (S.D.N.Y. Mar. 3, 2022) (applying to claims of discrimination based on race and gender); *see also Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 455 (S.D.N.Y. 2023) (applying to claims of discrimination based on race and disability); *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 460–61 (S.D.N.Y. 2010) (applying to claim of discrimination based on sexual orientation).  Even under the broader NYCHRL standard, a plaintiff must establish that he has been treated less well, at least in part, because of his protected characteristic.  *De La Fuente v. Sherry Netherland, Inc.*, 845 F. App'x 29, 33 (2d Cir. 2021); *see also Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 329–30 (S.D.N.Y. 2020).

Plaintiff has not alleged sufficient facts showing that he was discriminated against because of his race, skin color, gender, sexual orientation, or disability.  The Amended Complaint instead describes potentially adverse employment actions that Plaintiff experienced, without linking those actions in any way to these protected characteristics.  Plaintiff's allegations include speculation that he was:  (i) directed to work at certain places at Amazon because of his race, *see* ECF No. 24 ¶ 9; (ii) ordered to attain a specific work rate because of his skin color, *id.*

¶ 12; (iii) told that his bathroom breaks were excessive because he was a man, *id.* ¶ 19; and (iv) forced to attain a higher work rate than others despite being blind in one eye, *id.* ¶ 19.  These are conclusory statements based on Plaintiff's own beliefs that are unsupported by facts giving rise to an inference of discriminatory intent.  *See, e.g.*, ECF No. 24 ¶ 6(G) (speculating that Amazon directed individuals to "spy, contain, and control and calm the black employees"); *id.* ¶ 12(G) (alleging that Plaintiff "doesn't have the worst rate in Amazon.  [He] has the worst skin color in Amazon."); *id.* ¶ 12(D) ("[Mr. Picciano] would have never told a woman in Amazon about her bathroom use."); *id.* ¶ 19(B) ("Amazon management wanted [Plaintiff] to have an increased rate of work, when [he] doesn't even have vision on his right side.").[11]  Indeed, "although the NYCHRL is broad, a plaintiff's mere subjective belief that he was discriminated against" because of his protected characteristic does not sustain a discrimination claim.  *Farmer*, 473 F. Supp. 3d at 330; *see also Mitchell*, 2022 WL 621956, at *5 ("[S]uch conclusory statements—unsupported by facts giving rise to an inference of discriminatory intent—are insufficient to establish a *prima facie* case of discrimination.").

---

[11]    With respect to the various comments Plaintiff alleges his co-workers have made to him or in his presence, though they are offensive and condemnable, the use of an epithet by a non-managerial co-worker, that is otherwise unconnected to an adverse employment action, is not enough to permit the Court to infer that an alleged adverse employment action by Amazon was motivated by a discriminatory intent.  *See Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) ("isolated derogatory remark" made by someone with no role in plaintiff's termination not enough to support claim of discrimination); *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 406 (E.D.N.Y. 2018) ("[S]tatements from lower-level employees who did not have decision-making authority" do "not give rise to an inference of discrimination."); *see also Bledsoe v. Delta Air Lines, Inc.*, No. 23-cv-03146, 2024 WL 1142321, at *3 (E.D.N.Y. Mar. 15, 2024) (finding a co-worker's use of an offensive word insufficient to give rise to a discrimination claim).  At bottom, another employee's derogatory remarks are insufficient for Plaintiff to state a discrimination claim because the remark is "without any link to the adverse employment action taken against [Plaintiff]."  *Abada v. Delta Air Lines, Inc.*, No. 21-123, 2022 WL 894704, at *2 (2d Cir. Mar. 28, 2022).

Regarding Plaintiff's disability discrimination claim, to the extent that he also alleges one based on a failure to accommodate his disability, that claim separately fails. To establish a *prima facie* case for a disability discrimination claim based on the failure to accommodate under the NYSHRL and NYCHRL, Plaintiff must allege: (i) he is a person with a disability; (ii) Defendants had notice of his disability; (iii) he could perform the essential functions of the job at issue with reasonable accommodation; and (iv) Defendants refused to make such accommodations. *Stinson v. City Univ. of New York*, No. 17-cv-3949, 2018 WL 2727886, at *8 (S.D.N.Y. June 6, 2018). Plaintiff fails to establish a *prima facie* case because, by his own admission, Amazon was not on notice regarding his disability. In the Amended Complaint, Plaintiff describes an instance in which he tells a supervisor, Mr. Picciano, that he cannot see the small print on the labels of the packages. ECF No. 24 ¶ 19(G). When Mr. Picciano asked Plaintiff if he had any vision problems, Plaintiff responded "I don't have to tell you if I have problems with my vision." *Id.* Since, by Plaintiff's own admission, Amazon was "unaware that such a disability existed, it [was] impossible for [any employment] decision to have been based, even in part, on [Plaintiff's] disability." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003); *see also Woodman v. WWOR-TV, Inc*., 411 F.3d 69, 81 (2d Cir. 2005) ("Even before *Raytheon,* two of our sister circuits had ruled that a plaintiff . . . was required to adduce some evidence of a defendant's knowledge of the alleged disabling condition to establish a *prima facie* case of discrimination."). Accordingly, as alleged, Plaintiff fails to establish a disability discrimination claim based on a failure to accommodate.

## IV.    Sexual Harassment and Hostile Work Environment Claims

Plaintiff also alleges that he suffered sexual harassment and a hostile work environment during his employment at Amazon. Under the NYCHRL "there are not separate standards for discrimination and harassment claims; rather, there is only the provision of the law that

proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender." *Luzunaris v. Baly Cleaning Servs.*, No. 23-cv-11137, 2024 WL 3926708, at *17 (S.D.N.Y. July 29, 2024), *report and recommendation adopted*, 2024 WL 3925919 (S.D.N.Y. Aug. 22, 2024).  The same is true for claims arising under the NYSHRL.  *Id.* at *17 (finding "hostile work environment standard under the NYSHRL to be analogous to the hostile work environment standard of the NYCHRL").  "[U]nder the NYCHRL, a plaintiff claiming a hostile work environment need only demonstrate that he or she was treated less well than other employees because of the relevant characteristic." *Villada v. Grand Canyon Diner*, No. 22-cv-2782, 2024 WL 3875778, at *9 (E.D.N.Y. Aug. 19, 2024).  "The conduct alleged must, however, exceed what a reasonable victim of discrimination would consider petty slights and trivial inconveniences, and mere personality conflicts will not suffice to establish a hostile work environment." *Id.*

Plaintiff's harassment and hostile work environment claims concern interactions that he had with his co-workers, Mr. Turner, Mr. Andron, and Frederick.  ECF No. 24 ¶¶ 6–8.  Plaintiff alleges that these individuals used offensive expletives to describe him and other employees.  *Id.* ¶¶ 6(B), 7(C), 8(A).  Plaintiff further alleges that Mr. Turner grabbed and squeezed his waist and commented that Plaintiff "scream[ed] like a girl." *Id.* ¶¶ 6(A)–(E).  Although the Court understands why Plaintiff was offended by the incidents he describes, "[i]solated incidents of unwelcome verbal and physical conduct have been found to constitute the type of 'petty slights and trivial inconveniences' that are not actionable even under the more liberal NYCHRL standard." *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013).  This is because, as discussed above, *see supra* Section III, "the NYCHRL, like Title VII and the NYSHRL, is still not a general civility code[.]" *Id.*  Moreover, Plaintiff must establish that he

suffered a hostile work environment *because* of his protected characteristics.  *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) ("[T]he determination of whether [plaintiff's] claims can survive the motion to dismiss ultimately turns on whether this treatment was unequal and based, at least in part, on [plaintiff's] protected status.").  Plaintiff surmises that the individuals he interacted with "would have never done [that] to a white employee," ECF No. 24 ¶ 6(C); or "would have never grabbed and squeezed a female employee by her waist," *id.* ¶ 6(D); or "would have never told anyone in the LGBTQ community that they were feeling like a girl," *id.* ¶ 6(E); or "would have never told a woman in Amazon about her bathroom use," *id.* ¶ 12(D).  But Plaintiff's allegations are mere conjecture; he does not plead "facts showing that comparators were treated better than the [P]laintiff was."  *Bautista*, 642 F. Supp. 3d at 428.

With regard to the offensive language used by some of these co-workers, allegations of isolated remarks by non-supervisory co-workers are insufficient to state a hostile work environment claim.  *See Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 167 (E.D.N.Y. 2015) (collecting cases).  Although undoubtedly offensive, Plaintiff's allegations about co-workers' use of slurs and derogatory language does not rise to the level of creating a hostile work environment.  *See Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4, 6–7 (2d Cir. 2017) (three derogatory comments by colleagues coupled with generally aggressive behavior by one colleague was insufficient to establish a hostile work environment under Section 1981, the NYSHRL, or the NYCHRL); *Albert-Roberts v. GGG Constr., LLC*, 542 F. App'x 62, 63 (2d Cir. 2013) (co-worker's single use of racial epithet insufficient to rise to the level of a hostile work environment).  The Court therefore finds Plaintiff's allegations insufficient to make out a hostile work environment claim.

## V.      Retaliation Claims

For Plaintiff to allege plausible retaliation claims under the NYSHRL and the NYCHRL, he must allege that:  (i) he engaged in a protected activity; (ii) his employer was aware that he participated in such activity; (iii) his employer engaged in conduct "which was reasonably likely to deter a person from engaging in that protected activity"; and (iv) there is a causal connection between the protected activity and alleged retaliatory conduct.  *Edelman v. NYU Langone Health Sys.*, 708 F. Supp. 3d 409, 436 (S.D.N.Y. 2023).  "Retaliation claims brought under the NYSHRL and NYCHRL need not allege a formal adverse employment action."  *Palmer v. eCapital Corp.*, No. 23-cv-4080, 2024 WL 3794715, at *11 (S.D.N.Y. Aug. 13, 2024).  "Even under the state and city provisions' broad standards, however, a plaintiff alleging retaliation still must establish that there was a causal connection between [his] protected activity and the employer's subsequent action."  *Id.*

### A.      Attempt to Transfer out of Trans-Ship Department

Plaintiff's first retaliation claim—that Paola and an individual named Santiago tried to transfer him out of the "trans-ship department" because of his race, *see* ECF No. 24 ¶¶ 9(F), (G)—fails to state a plausible retaliation claim because Plaintiff has not alleged that he engaged in any protected activity that resulted in the attempt to transfer him out of the "trans-ship department."  *Pouncy v. Advanced Focus, LLC*, 763 F. App'x 134, 136 (2d Cir. 2019) ("[B]ecause [plaintiff] did not show that he engaged in any *protected activity* for which he was retaliated against, [his] claims necessarily fail." (emphasis in original)).  This claim is more akin to a discrimination claim, which, as discussed above, *see supra* Section III.B, is also insufficiently pled.  *See Farmer*, 473 F. Supp. 3d at 330 ("[A]lthough the NYCHRL is broad, a plaintiff's mere subjective belief that he was discriminated against because of his race does not sustain a race discrimination claim.").  Plaintiff has therefore insufficiently pled this claim.

B.    More "Laborious" Work and Assignments to Lanes with Little Work

Plaintiff's second set of retaliation claims relate to actions that Ms. Sutnick and

Mr. Picciano took after Plaintiff filed an internal Amazon complaint against Mr. Picciano.  *See*

ECF No. 24 ¶¶ 14(A), (C), (E), 19(D).  Plaintiff alleges that after he filed this internal complaint

with Amazon, he was directed to do "laborious" work, he was assigned to work lanes with little

work, and he was assigned away from Mr. Picciano's workspace.  *Id.* ¶¶ 14(A), (C), (E), 19(D).[12]

"[W]hile there are no magic words that must be used in an internal complaint, the onus is on the

speaker to clarify to the employer that []he is complaining of unfair treatment due to [his]

membership in a protected class and that []he is not complaining merely of unfair treatment

generally."  *Medina v. AAM 15 Mgmt. LLC*, No. 21-cv-7492, 2024 WL 4307816, at *12

(S.D.N.Y. Sept. 26, 2024).  Although Plaintiff did not allege in the Amended Complaint that his

internal complaints against Mr. Picciano were based on discrimination, *see generally* ECF

No. 24, he does allege that discrimination was the subject matter of those internal complaints in

his opposition to Amazon's motion to dismiss, *see* ECF No. 34 at 9.  Accordingly, the Court

assumes Plaintiff has satisfied the first two prongs of his *prima facie* retaliation claim as it relates

to the complaint against Mr. Picciano.  Nevertheless, the Court finds that Plaintiff has not

established the third prong of his *prima facie* case, and therefore finds that these allegations do

not amount to a plausible retaliation claim.

With respect to whether the conduct was reasonably likely to deter others from filing

internal complaints, "[e]ven under the NYCHRL's relatively liberal standard, petty slights or

---

[12]    As an initial matter, the Court notes that Plaintiff's allegations are contradictory in the sense that he claims that on the one hand, he was assigned more work to do, and that on the other hand, he was assigned less work to do.  Nevertheless, the Court construes these allegations to be true as the Court has "no way of knowing at this stage what are the true facts."  *In re Hain Celestial*, 20 F.4th at 133.

minor annoyances that often take place at work are not actionable retaliation." *Ndongo v. Bank of China Ltd.*, No. 22-cv-05896, 2023 WL 2215261, at \*7 (S.D.N.Y. Feb. 24, 2023).  Plaintiff's allegations that he was assigned laborious work on certain occasions and assigned to places where there was no work on other occasions, as alleged, amount to, at most, "petty slights or trivial inconveniences that often take place at work."  *Id.* (concluding that allegations that plaintiff had to stay at work longer and perform tasks she did not typically perform did not constitute conduct that was reasonably likely to deter others from engaging in a protected activity).  Because allegations of "petty slights" or "trivial inconveniences" do not amount to conduct that would be reasonably likely to deter a person from engaging in that protected action, the Court finds that Plaintiff has failed to allege a *prima facie* case as it relates to this set of allegations.

### C.    Suspension and Termination

Plaintiff's final set of retaliation claims allege that he was retaliated against—in the form of suspension and termination—after he filed a complaint with the DCWP, after he filed the instant action, and after he made internal complaints at Amazon.  ECF No. 24 ¶ 18(B); ECF No. 34 at 2–7.  Amazon argues that Plaintiff has failed to allege the fourth prong of the *prima facie* case—that there is a causal connection between the protected activity and alleged retaliatory conduct.  ECF No. 29-1 at 24.  Plaintiff may establish a causal connection "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory

animus directed against the plaintiff by the defendant." *Cheong v. Bank of E. Asia, Ltd.*, No. 22-cv-9234, 2024 WL 1348498, at *11 (S.D.N.Y. Mar. 29, 2024).

As an initial matter, Plaintiff has not alleged that Amazon retaliated against him directly, or expressly suspended him or terminated him *because* he engaged in any protected activity. For example, there are no allegations that Amazon referred to Plaintiff's complaints when they communicated to him that he was being suspended or terminated. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 277 (2d Cir. 2023) ("[E]xplicit reference to the status of [plaintiff's] complaints and their correlation to . . . approval decisions is direct evidence sufficient to support a finding of retaliatory intent."); *see also Ferraro v. N.Y.C. Dep't of Educ.*, 404 F. Supp. 3d 691, 715–16 (E.D.N.Y. 2017) ("[T]here is no evidence that Defendants threatened Plaintiff or made comments that would indicate that Defendants had any retaliatory motive."), *aff'd*, 752 F. App'x 70 (2d Cir. 2018). Indeed, Plaintiff has not even alleged that the individuals who made the decisions to suspend and terminate him were aware of any of his various complaints. *See Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-cv-2011, 2022 WL 3100663, at *17 (S.D.N.Y. Aug. 4, 2022) (dismissing NYSHRL and NYCHRL claims where plaintiff did not allege anyone who allegedly retaliated against her knew about the EEOC charges she had filed or discussed those charges with her).

Plaintiff has also not established an indirect causal connection between his complaints and his suspension and termination in a way that would be "reasonably likely to deter a person from engaging in protected activity." *Edelman*, 708 F. Supp. 3d at 436. Because Plaintiff does not allege that other employees who engaged in protected activities were treated differently than he was, the Court analyzes the indirect causal connection prong from a temporal perspective. Generally speaking, "[t]here is no firm outer limit to the temporal proximity required, but most

courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019); *see also Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) ("The time lapses between Brown's protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations.").

Plaintiff's allegations regarding retaliation span a three-year period, starting in 2020 when he received his first write-ups regarding his performance at Amazon, *see* ECF No. 64 at 3, and ultimately to his termination in April 2023, *id.* at 4.  Two years after receiving write-ups in 2020, Plaintiff filed a complaint with DCWP in May 2022.  *Id.*[13]  Then, in December 2022, Plaintiff received two additional write-ups from Mr. Picciano.  After each write-up, Plaintiff made written and oral complaints against Mr. Picciano.  *Id.*  On January 3, 2023, Plaintiff filed the original complaint in this lawsuit.  *Id.*  Plaintiff received a further write-up on February 15, 2023.  ECF No. 24 ¶ 14(L).  The next day, Plaintiff made an oral complaint against his supervisors, including Mr. Picciano and Ms. Sutnick.  *Id.* ¶¶ 14(L), (M); ECF No. 64 at 4.  Then, on February 17, 2023, Plaintiff alleges that he was harassed by his supervisors as he was asked to go to the "ship dock" area.  ECF No. 24 ¶ 14(N).  After Plaintiff refused, he alleges that the harassment continued for five hours and he complained that he was being discriminated against.  *Id.*  Plaintiff was suspended with pay from February 18, 2023, to March 29, 2023.  *Id.* ¶ 14(O).  After returning to work, Plaintiff received a further write-up, which triggered his termination.

---

[13]    Defendants reference a later complaint that it received notice of from the DCWP.  ECF No. 61-1 (October 19, 2023, Notice of Complaint).  Because that complaint was filed after Plaintiff's termination, his termination is not considered an adverse employment action under the NYCHRL.  *See Mucciarone v. Initiative, Inc.*, No. 18-cv-567, 2020 WL 1821116, at *14 (S.D.N.Y. Apr. 10, 2020) ("Actions that predate the occurrence of the protected activity cannot form the required causal connection.").

ECF No. 64 at 4.  Plaintiff thereafter made numerous internal complaints, but Plaintiff was effectively terminated on April 9, 2023.  ECF No. 64 at 4; ECF No 34 at 24.

The Court easily finds the seven-month gap between the DCWP complaint and Plaintiff's suspension and the eleven-month gap between the DCWP complaint and Plaintiff's termination to be far too long to amount to sufficient temporal proximity permitting an inference of causation.  *See Williams v. City of New York*, No. 11-cv-9679, 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged.").  With respect to the shorter time frames, such as the gaps between the filing of this lawsuit and Plaintiff's suspension and ultimate termination, the temporal proximity is a closer question.  Nevertheless, "[w]here progressive discipline began before a protected activity, there is no reasonable inference that the continuation of that activity after the protected activity was caused at all by the protected activity."  *Burgess v. New Sch. Univ.*, No. 23-cv-4944, 2024 WL 4149240, at *11 (S.D.N.Y. Sept. 11, 2024); *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").  Indeed, courts have dismissed retaliation claims where plaintiffs alleged the retaliatory conduct escalated gradually and began before protected activity.  *See Forrest v. NYCHA*, No. 22-cv-6480, 2023 WL 3203646, at *9 (S.D.N.Y. May 2, 2023) (citing cases and recognizing that "[a]lthough *Slattery* was decided on a summary judgment motion, courts routinely apply the Second Circuit's holding regarding causation in *Slattery* on motions to dismiss"); *Europe v. Equinox Holdings, Inc.*, No. 20-cv-7787, 2022 WL 16949864, at *2 (S.D.N.Y. Nov. 15, 2022) ("[B]ecause the plaintiff's protected activity began long after Equinox

had begun to discipline the plaintiff for lateness, there was no causal connection between her ultimate termination for lateness and that protected activity even under the permissive standard of the NYCHRL.").

Here, too, the protected activities Plaintiff engaged in, such as filing internal complaints at Amazon and filing this lawsuit, closely followed instances in which Plaintiff was disciplined by his superiors for his work performance.  And, as supported by Plaintiff's own allegations, *see* ECF No. 64 at 3–4, "adverse actions against [him] began well before his first formal complaint." *Stinson*, 2018 WL 2727886, at *11 (dismissing NYSHRL and NYCHRL retaliation claims with a one-month and six-day gap between protected activity and termination given that employer had disciplined plaintiff multiple times prior to his complaint).  "An employee who has been repeatedly reprimanded and who sees the writing on the wall cannot shield [him]self from legitimate managerial prerogatives by threatening a discrimination complaint and then alleging unlawful retaliation." *Vitale v. Equinox Holdings, Inc.*, No. 17-cv-1810, 2019 WL 2024504, at *13 (S.D.N.Y. May 7, 2019).  Accordingly, in light of Plaintiff's allegations, which support his protected activities followed progressive discipline from Amazon, the Court cannot find an inference of retaliation with respect to Plaintiff's suspension and termination.  Defendants' motions are therefore granted as to this claim.

## VI.    Aiding and Abetting Claims

Plaintiff alleges that Mr. Jassy is liable for aiding and abetting violations of the NYSHRL and the NYCHRL involving discrimination, retaliation, and sexual harassment, as discussed above.  ECF No. 24 ¶ 20.  However, a precondition to a valid aiding and abetting claim under the NYSHRL and the NYCHRL is that there is a viable underlying claim for discrimination or retaliation.  *See Murray v. United Parcels Serv., Inc.*, No. 20-cv-1427, 2022 WL 4468295, at *22 (E.D.N.Y. Sept. 25, 2022) (applying to the NYCHRL); *DeJesus v. Bon Secours Cmty. Hosp.*,

No. 23-cv-806, 2024 WL 554271, at *10 (S.D.N.Y. Feb. 12, 2024) (applying to NYSHRL), *reconsideration denied*, 2024 WL 1484253 (S.D.N.Y. Apr. 5, 2024).  "Because Plaintiff has failed to allege an underlying violation of either statute, these [aiding and abetting] claims must fail."  *Ogbolu v. Trs.s of Columbia Univ. in the City of New York*, No. 21-cv-1697, 2022 WL 280934, at *7 (S.D.N.Y. Jan. 31, 2022) (granting motion to dismiss), *aff'd*, No. 22-419, 2023 WL 2579044 (2d Cir. Mar. 21, 2023).

### VII.    Leave to Amend: Failure to Pay Sick Pay

Plaintiff has sought—in his Opposition to Mr. Jassy's Motion to Dismiss—to amend his complaint to bring a failure to pay sick pay claim under the NYC Earned Safe and Sick Time Act.  ECF No. 55 at 4.  With respect to Plaintiff's sick pay claim, Plaintiff has already pled factual allegations to that effect, *see* ECF No. 24 ¶ 3(A), and affirmatively withdrawn them, *see* ECF No. 55 at 4.  Plaintiff merely seeks to bring the same claims now (again), but under a different statute.  *Id.*

The Court declines to grant Plaintiff leave to amend this claim or any other claim. Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff yet another opportunity to further amend his pleadings.  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).  "A court should freely give leave when justice so requires . . . but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021).

First, with respect to Plaintiff's sick pay claim, Plaintiff was well aware of this claim when he filed his Amended Complaint, as he alleged there he was not paid for sick days. *See generally* ECF No. 24. The essential facts of Plaintiff's claims remain unchanged, he merely requests that he now be able to bring them under a different statute. *Doe v. Paychex, Inc.*, No. 17-cv-2031, 2019 WL 2027080, at *14 (D. Conn. May 6, 2019) (denying leave to amend where facts underlying claim were unchanged). Given that Plaintiff already had the opportunity to bring these claims in the original Complaint and the Amended Complaint, the Court finds permitting Plaintiff another opportunity to amend his Amended Complaint would cause undue delay and prejudice to Defendants and therefore denies leaves to amend on this basis alone.

Second, as this decision makes clear, the Court has conducted a detailed review of all the substantive papers filed by Plaintiff. *See* ECF Nos. 1, 24, 34, 55, 64. Those papers are voluminous and repetitive. Nevertheless, even though not required, the Court has excused compliance with the relevant procedural rules to allow Plaintiff, whose allegations involve many different incidents, to present all relevant information to allow the Court to make out the "strongest arguments" suggested by his pleadings. *See Triestman*, 470 F.3d at 472, 477. At this point, "Plaintiff has pleaded his case exhaustively." *See Vasquez v. City of New York*, No. 22-cv-5068, 2024 WL 1348702, at *14 (E.D.N.Y. Mar. 30, 2024) (denying leave to amend). Based on the foregoing, the Court easily concludes that granting further leave to amend would be futile because there is no "indication that a valid claim might be stated" as to those claims dismissed under Rule 12(b)(6). *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). That is especially true in this case because Plaintiff has already amended his complaint once and because I have considered the allegations raised for the first time in the Opposition and Supplemental Briefing as if they were included in a formal amended complaint. Accordingly, Plaintiff has effectively

already been given a second, third, and fourth, opportunity to amend his complaint. *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022). That is already three more times than the Circuit ordinarily requires, and further leave to replead would be futile. *See Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-cv-2928, 2024 WL 3718675, at *21 (E.D.N.Y. Aug. 8, 2024). The Court therefore declines to grant leave to amend the Amended Complaint.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted. *See* ECF Nos. 29, 45, 60. Because the Court lacks subject matter jurisdiction to hear Plaintiff's Wage and Notice claims, *see supra* § I, those claims are dismissed without prejudice. The remainder of Plaintiff's claims are dismissed with prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment, close the case, and mail a copy of this order to *pro se* Plaintiff.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
        January 21, 2025